### NORRIS BAILEY *vs.* JOSHUA R. KͲ

The defendant's son, eighteen years of age, who was living with and working for the defendant, made purchases of clothing from time to time of the plaintiff, directing that they be charged to the defendant. It appeared that the defendant had, four years before, published a notice in the public papers, which the plaintiff had seen, forbidding all persons to trust his son on his account; but the defendant had since then without objection paid to the plaintiff several small bills for clothing which his son had purchased on his credit. Held that he had waived his rights under the notice, so far as the plaintiff was concerned, and could not set it up against the plaintiff's claim.

ASSUMPSIT, to recover for goods sold and for work done; brought to the Court of Common Pleas of Hartford County and tried on the general issue, closed to the court, before *Briscoe, J.* The court found the following facts:

The plaintiff's bill of particulars consisted of an account for articles of clothing sold, and for work done in making and repairing clothing, from April 24th, 1867, to June 6th, 1868. At the time of the sale and delivery of the articles the plaintiff was a merchant tailor, doing business in New Britain, where he had carried on said business and resided for more than twenty years; the defendant during the same time being also a resident of New Britain, and carrying on the business of a blacksmith and wagon maker.

On the 24th of April, 1867, the defendant paid to the plaintiff, with whom he had a book account, the sum of $29.-62 to settle his account, and at the same time purchased a

hat which he directed the plaintiff to charge to him.  Soon after the defendant came again with his son Thomas, a minor about eighteen years of age, who lived with his father and worked for him in his shop, and applied to the plaintiff to make a suit of clothes for him, and selected the goods for it, directing the plaintiff to deliver the suit when made to Thomas ; which was done by the plaintiff on the 3d of June, 1867, and at the same time charged on his book to the defendant at the price agreed, which was $30.   Thomas was at this time living with his father, and most of the time working for him.   On the 11th of May, 1867, he purchased a hat of the plaintiff, and from that time to the 20th of June, 1868, made frequent purchases of articles of clothing, including numerous pairs of kid gloves, as well as ornamental sleeve-buttons, neckties, scarfs, and other articles of luxury.   At the times he procured them he informed the plaintiff that he had authority to make the purchases from his father, and directed them to be charged to him.   The articles were such as are usually worn by young men of his age, and were worn by him while working for his father and living in his family.

Previous to these purchases Thomas had been accustomed to purchase articles of apparel from time to time of the plaintiff for more than eight years ; sometimes being expressly sent by his father to do so, and to have them charged to the defendant ; and he had continued so to do up to the time of the purchases now in question ; and all the bills so contracted had been paid by the defendant without objection.

About four years previous to the contracting of the present bill, Thomas, while absent at school in Cheshire, had contracted bills contrary to his father's desire, and he had published a notice in a newspaper in New Britain forbidding all persons trusting him on his account.   The plaintiff had heard of the fact, but had had no express notice from the defendant.

On the 25th of June, 1867, Thomas paid the plaintiff $2.50, and on November 9th, 1867, $2.00, which was credited to the defendant on the plaintiff's book.   The defendant, on the 15th of October, 1867, and 10th of July, 1868, paid $37.35

to the plaintiff, and directed it to be applied in payment of certain articles charged to him on his book and delivered to another party. The defendant also, on the 2d of June, 1868, paid the plaintiff $25. These sums were credited to him on the plaintiff's books. No other payment has ever been made on the account.

The defendant claimed, and asked the court to hold, that he did not constitute his son his agent, and that no agency could be implied in law from the facts, and that therefore the plaintiff was not entitled to recover for the goods delivered to the son. He also claimed that the plaintiff was precluded from recovering for the goods delivered to the son, because the defendant had given public notice that he would not be chargeable for the purchases made by his son in his name, which fact had come to the plaintiff's knowledge. But the court overruled these claims of the defendant, and rendered judgment for the plaintiff.

The defendant brought the record before this court by a motion in error, assigning as error that the court erred in not holding upon the facts that the plaintiff was precluded from recovering for the goods delivered to the son, by his knowledge of the fact that the defendant had prohibited any one from trusting him on his account; and in not holding upon the facts that, as the goods were all delivered to a minor son for whom the father provided, no liability existed on the part of the defendant to the plaintiff.

*H. H. Barbour, Jr.,* for plaintiff in error.

*Pease,* for defendant in error.

PHELPS, J. The legal principles applicable to this case are too familiar and well settled to admit of controversy, and no difference is claimed to exist except with respect to the proper application of the law to the facts as they have been found by the Court of Common Pleas.

The plaintiff was a merchant tailor, and the goods in question such articles of apparel as are usually worn by young men of the age of the defendant's son; and some and perhaps a large part of the plaintiff's bill of particulars consists

of articles which may be regarded as necessary to the circumstances and condition of the son, who was a mechanic between eighteen and twenty-one years of age, residing in the defendant's family, and most of the time in his service, and, as we understand the finding, without other compensation than his support.

The accounts between the parties were last adjusted on the 24th day of April, 1867, when the bill now under consideration was commenced. About four years prior thereto the defendant published a notice forbidding all persons trusting his son on the defendant's credit, and it is assigned as error that the court held that the plaintiff was entitled to recover after his knowledge of the publication of this notice, and did not hold that, as the goods were all delivered to a minor son for whom his father provided, the defendant was not liable.

We think the facts found by the court below satisfactorily dispose of both these objections. It appears in the record that after the publication by the defendant of his notice, the son continued to purchase goods of the plaintiff as before, for which the defendant paid, and so far as appears without objection or complaint. If he was dissatisfied and intended to avoid personal liability he should have adhered to the declaration contained in his notice. By continuing to pay he continued to recognize the propriety of the plaintiff's conduct in delivering the goods to his son on the defendant's credit, and might reasonably be understood and presumed by the plaintiff to have reconsidered his intention not to be further chargeable for articles which the plaintiff should deliver to his son.

By the defendant's course of dealing with the plaintiff subsequently to the publication of his notice, he has waived his right to set up the notice as a bar to the plaintiff's claim, and should not now be heard to insist that he is not liable on the ground that the goods were delivered to his minor son for whom he provided.

There is no error.

In this opinion the other judges concurred.